1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10

11  BRENDA M.,[1]                          No. 8:24-cv-02580-AJR
12              Plaintiff,                 **MEMORANDUM DECISION**
13        v.                               **AND ORDER**

14  FRANK BISIGNANO,[2]
    Commissioner of Social Security,
15
              Defendant.
16

17

18                          **I.**

19                    **INTRODUCTION**

20          Brenda M. ("Plaintiff") brings this action seeking to overturn the decision of

21  the Commissioner of Social Security (the "Commissioner" or "Defendant") denying

22  her application for Disability Insurance Benefits ("DIB").  The parties consented,

23  pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States

24  ─────────────────

25      [1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil
    Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
26  Administration and Case Management of the Judicial Conference of the United
    States.
27
        [2] Commissioner Frank Bisignano is substituted in as the Defendant in this action
28  pursuant to Federal Rule of Civil Procedure 25(d).

Magistrate Judge.  (Dkt. 5, 6, 7, 17.)  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.
## PROCEDURAL HISTORY

Plaintiff filed an application for DIB on July 6, 2021, alleging disability commencing on April 20, 2017.  (Dkt. 12-1 at 316-21.)  The Commissioner denied the claims by initial determination on May 13, 2022, and upon reconsideration on December 5, 2022.  (Id. at 95, 115.)  Plaintiff filed a written request for a hearing on January 6, 2023.  (Id. at 132.)  On February 29, 2024, Administrative Law Judge Stacy Zimmerman (the "ALJ") conducted a hearing[3] and subsequently published an unfavorable decision on April 3, 2024.  (Id. at 27-38, 45-77.)  Plaintiff requested review of the ALJ's decision by the Appeals Council on May 28, 2024.  (Id. at 227-28.)  The Appeals Council denied Plaintiff's request for review on September 27, 2024.  (Id. at 7-10.)  On that date, the ALJ's decision became the final decision of the Commissioner.  See 42 U.S.C. § 405(h).  Plaintiff now seeks review of the ALJ's final decision.

## III.
## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must

---

[3] Plaintiff was represented by an attorney at the hearing.  (Dkt. 12-1 at 47-48.) Vocational Expert John Maier (the "VE") testified at the hearing by telephone.  (Id.)

render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

<u>Tackett</u>, 180 F.3d at 1098-99; <u>see also</u> <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. <u>Bustamante</u>, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. <u>Id.</u> at 954. If, at step four, the claimant meets their burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1),

3

416.920(g)(1).  The Commissioner may do so by the testimony of a vocational

expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20

C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has

both exertional (strength-related) and non-exertional limitations, the Grids are

inapplicable and the ALJ must take the testimony of a VE.  Moore v. Apfel, 216

F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th

Cir. 1988)).


## IV.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded

that Plaintiff was not disabled within the meaning of the Social Security Act.  (Dkt.

12-1 at 27-38.)  At step one, the ALJ found that Plaintiff had not engaged in

substantial gainful activity during the period from her alleged onset date of April 20,

2017, through her date last insured of June 30, 2023.  (Id. at 29.)  At step two, the

ALJ found that Plaintiff had the following severe impairments: cervical and lumbar

degenerative disc disease (DDD) with radiculopathy; bilateral shoulder

impingement syndrome; and degenerative joint disease (DJD) of the bilateral hands

and the bilateral knees.  (Id.)  The ALJ also determined that Plaintiff had the non-

severe impairments of mild degenerative changes of the feet; tendinitis of the right

Achilles tendon; major depressive disorder (MDD); anxiety disorder; and attention

deficit hyperactivity disorder (ADHD).  (Id. at 30-31.)  At step three, the ALJ

determined that Plaintiff did not have an impairment or combination of impairments

that met or medically equaled the severity of any of the listings in the regulations.

(Id. at 32.)

The ALJ assessed Plaintiff's RFC and concluded that she "could lift and carry

4

20 pounds occasionally and 20 pounds frequently, stand and walk 4 hours in an 8-hour day, and sit 6 hours in an 8-hour day; could frequently balance; could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; could not climb ladders, ropes, or scaffolds; could frequently handle, finger, and reach overhead with the arms; must avoid more than occasional exposure to extreme cold; could not be exposed to hazards such as dangerous moving machinery or unprotected heights; and could not walk on uneven terrain." (Id. at 32 (bold omitted).)  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the below alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Id. at 33.)

Further, at step four, the ALJ found that Plaintiff was capable of performing her past relevant work as an office manager and as a program manager. (Id. at 36-37.)  Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the Social Security Act from April 20, 2017, through the date last insured, June 30, 2023.  (Id. at 37.)

**V.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v.

Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VI.

## DISCUSSION

Plaintiff raises three grounds for relief. First, Plaintiff contends that the ALJ improperly discounted her subjective complaints. (Dkt. 13 at 7-18.) Second, Plaintiff contends that the ALJ's finding that she could use her upper extremities on a frequent basis was not supported by substantial evidence. (Id. at 18-23.) Finally, Plaintiff contends that new evidence submitted to the Appeals Council supports remand for the ALJ to reconsider Plaintiff's upper extremity limitation. (Id. at 23-25.) For the reasons set forth below, the Court affirms the decision of the Commissioner.

### A.    The ALJ Properly Considered Plaintiff's Subjective Symptom Testimony.

In her first ground for relief, Plaintiff contends that the ALJ failed to provide clear and convincing reasons to reject her subjective symptom complaints. (Dkt. 13

at 9.)  Specifically, Plaintiff contends that the ALJ did not adequately address the reasons for discounting her subjective complaints of hand and arm pain that limited her extremities to "occasional use at most."  (Id. at 10.)  Further, Plaintiff argues that the ALJ improperly used evidence of Plaintiff's activities of daily living to discount her complaints of disabling pain.  (Id. at 15-17.)

### 1.    Legal Standard.

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017).  First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. See Garrison, 759 F.3d at 1014.  "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Id. (emphasis in original) (citation omitted).  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."  Id. (internal quotation marks omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity.  See Trevizo, 871 F.3d at 678; see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

In discrediting the claimant's subjective symptom testimony, the ALJ may

consider the following:

> (1) ordinary techniques of credibility evaluation, such as
> the claimant's reputation for lying, prior inconsistent
> statements concerning the symptoms, and other
> testimony by the claimant that appears less than candid;
> (2) unexplained or inadequately explained failure to seek
> treatment or to follow a prescribed course of treatment;
> and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal quotation marks

omitted).  Inconsistencies between a claimant's testimony and conduct, or internal

contradictions in the claimant's testimony, also may be relevant.  See Burrell v.

Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d

789, 792 (9th Cir. 1997).  In addition, the ALJ may consider the observations of

treating and examining physicians regarding, among other matters, the functional

restrictions caused by the claimant's symptoms.  See Smolen, 80 F.3d at 1284;

accord Burrell, 775 F.3d at 1137.  However, it is improper for an ALJ to reject

subjective testimony based "solely" on its inconsistencies with the objective medical

evidence presented.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th

Cir. 2009) (internal quotation marks omitted).

　　　　Further, the ALJ must make a credibility determination with findings that are

"sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

discredit claimant's testimony."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th

Cir. 2008) (internal quotation marks omitted); see Brown-Hunter v. Colvin, 806

F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible

must be sufficiently specific to allow a reviewing court to conclude the adjudicator

rejected the claimant's testimony on permissible grounds and did not arbitrarily

discredit a claimant's testimony regarding pain." (internal quotation marks

omitted)).  The ALJ must identify "what testimony is not credible and what

evidence undermines the claimant's complaints."  Brown-Hunter, 806 F.3d at 493.

Although an ALJ's interpretation of a claimant's testimony may not be the only

reasonable one, if it is supported by substantial evidence, "it is not [the court's] role
to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### 2.   Plaintiff's Subjective Symptom Testimony.

At the hearing, Plaintiff's attorney alleged disability due to post-surgical
problems with Plaintiff's upper extremities, including moderate carpal tunnel
syndrome. (Dkt. 12-1 at 49.) Plaintiff testified that she was unable to work because
of "a lot of pain" in situations such as "reaching out with [her] hand to use [her]
mouse," sitting at a computer or desk for a "prolonged length of time," and putting
her hands on the steering wheel to drive. (Id. at 59.) She characterized the pain as
"debilitating" and causing a "chain reaction" throughout her body. (Id.) Because of
the pain, Plaintiff stated she was unable to complete tasks like filling out her taxes.
(Id. at 59-60.) Plaintiff testified she had cervical spine surgery, which helped but
did not "take care of the problem." (Id. at 60.) Nevertheless, she testified she was
able to drive, grocery shop, do her own wash, and cook "a couple of times a week."
(Id. at 61-62.) In a typical day, she showers, makes her bed, reads, and takes a short
walk around the block. (Id. at 62.) However, even looking down while reading
causes her neck pain and complained her arms were "really hurting really bad right
now." (Id.)

Plaintiff testified that she tried to relieve her neck pain with ice and heat and
wearing a brace, but it was not effective. (Id. at 64.) She also testified that because
of her arm and hand pain, she had "difficulty writing." (Id.) She tried using a
computer at the library, but could only last about 10 minutes because of
"excruciating pain." (Id. at 65-66.) Plaintiff also stated that she had lower back
pain that caused her to lay on the floor and cry. (Id. at 66.) She indicated that she
could only walk for about 20 minutes, stand for 15 minutes, and sit for an hour
before her neck, back, and legs became too painful. (Id. at 68.)

Plaintiff testified that she was having a lot of pain in her hands that was

9

causing her to drop things around the house.  (Id. at 68-69.)  She wears a brace that
lessens the pain, but she estimated that she could only lift 10 pounds and do an
activity with her hands—like typing—for 10 minutes at most.  (Id.)

### 3.    Analysis.

The ALJ engaged in the two-step analysis required by Trevizo and found at
the first step that Plaintiff's "medically determinable impairments could reasonably
be expected to cause the [ ] alleged symptoms."  (Dkt. 12-1 at 33.)  However, the
ALJ concluded at the second step that Plaintiff's "statements concerning the
intensity, persistence, and limiting effects of these symptoms are not entirely
consistent with the medical evidence and other evidence in the record."  (Id.)  The
ALJ discounted portions of Plaintiff's subjective symptom testimony by relying on
inconsistencies between Plaintiff's testimony and the objective medical evidence, as
well as inconsistencies between Plaintiff's testimony and statements given to
consultative examiners regarding her activities of daily living.  (Id. at 33-34.)

First, the ALJ noted the lack of consistency between the medical evidence and
Plaintiff's "allegations of debilitating symptoms" due to pain in her neck, back, and
upper and lower extremities.  (Id. at 34.)  Specifically, the ALJ noted that Plaintiff's
"exertional allegations are inconsistent with her generally normal gait, mostly
normal or mildly reduced strength, and negative SLR."  (Id.)  In support of this
finding, the ALJ highlighted clinical examinations showing Plaintiff maintained full
range of motion in her shoulders with "normal" sensation in her extremities.  (Id. at
33 (citing Dkt. 12-1 at 568-69, 728-29, 743, 972-99; Dkt. 12-2 at 166-68; Dkt. 12-3
at 882-84).)  Additionally, Plaintiff's gait had been "generally normal," except for a
brief period in 2021, and she was able to perform heel-to-toe and tandem walk
during testing.  (Id. at 33 (citing Dkt. 12-1 at 600-01, 700-01; Dkt. 12-2 at 166-68,
174-85).)  Further, in her extremities, Plaintiff's range of motion was "generally
normal and tenderness has been generally absent," strength was "normal or mildly

reduced," and she was able to perform straight leg raising bilaterally.  (Id. at 33
(citing Dkt. 12-1 at 728-29, 839; Dkt. 12-2 at 51-58, 142, 166-68, 174-85; Dkt. 12-3
at 356, 639, 795; Dkt. 12-4 at 13)).)

The ALJ also pointed to a 2017 upper-extremity electrodiagnostic test by Dr.
Jeffrey T. Ho that showed right moderate and left borderline neuropathy across
Plaintiff's wrists but was, otherwise, normal.  (Id. at 34 (citing Dkt. 12-1 at 748-
49).)  Subsequent electrodiagnostic tests of Plaintiff's upper limbs in 2018 and 2021
by Dr. Andrew O. Schreiber revealed no electrodiagnostic evidence of carpal tunnel
syndrome, ulnar nerve entrapment, or cervical radiculopathy.  (Id. (citing Dkt. 12-2
at 275; Dkt. 12-3 at 20)).)

In light of this evidence, the Court concludes that the ALJ properly
discounted Plaintiff's subjective symptom testimony due to a lack of consistent
clinical findings in the record.  See Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir.
2022) ("When objective medical evidence in the record is inconsistent with the
claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such
testimony." (italics omitted)); Rollins, 261 F.3d at 857 ("While subjective pain
testimony cannot be rejected on the sole ground that it is not fully corroborated by
objective medical evidence, the medical evidence is still a relevant factor in
determining the severity of the claimant's pain and its disabling effects."); 20 C.F.R.
§ 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to
assist us in making reasonable conclusions about the intensity and persistence of
your symptoms and the effect those symptoms, such as pain, may have on your
ability to work.").  As set forth above, there is substantial evidence in the record to
support the ALJ's findings that Plaintiff's subjective symptom testimony was
inconsistent with the objective medical evidence.

Second, the ALJ emphasized the inconsistency between Plaintiff's testimony
and her previously reported activities of daily living.  (Dkt. 12-1 at 34.)  The ALJ

specifically noted that, at the hearing, Plaintiff testified that she had significant limitations, including "needing help with household chores, having difficulty driving because it hurts to grasp the steering wheel and to turn her head, and having days when she has difficulty with tasks of personal care." (Id.) To other medical consultative examiners, however, she indicated an ability to perform more extensive daily activities, such as doing chores, running errands, shopping, preparing meals without assistance, managing money, driving, going places by herself, doing water aerobics, cleaning the kitchen, mopping the bathroom floor, and watering plants. (Id. (citing Dkt. 12-4 at 1, 140).) From these inconsistencies, the ALJ reasonably determined that Plaintiff's reported daily activities to other medical providers indicated a higher level of functioning than she alleged at the hearing. See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (holding a claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity"); see also Bray, 554 F.3d at 1227 (finding ALJ properly found claimant not credible in part when her testimony at administrative hearing contradicted her statements to evaluating physician); Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) (finding ALJ properly rejected claimant's testimony based, in part, on contradictory statements regarding his daily activities).

Plaintiff argues that the ALJ's decision to discount her subjective symptom testimony was erroneous because another federal court had previously determined that her allegations of pain were "credible." (Dkt. 13 at 17.) Plaintiff cites to a 2022 federal district court opinion in which she was awarded long-term disability benefits

under an insurance policy after the judge found the insurance company presented "nothing in the record to suggest her pain was exaggerated or a cop-out from employment."  (Dkt. 12-1 at 527.)  First, Plaintiff mischaracterizes the ruling, as it simply noted the lack of evidence provided by the insurance company to undermine her allegations of pain rather than directly finding that Plaintiff was credible.  (See id.)  Second, the ruling has no bearing on Plaintiff's testimony before the ALJ and whether it was contradicted by other evidence in the record here.  It is the ALJ's duty "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014); Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  The Court finds that the ALJ did so properly in this instance by examining the inconsistencies in Plaintiff's statements regarding her activities of daily living and with the objective medical evidence.

In sum, the Court concludes that the ALJ provided multiple, specific, clear and convincing reasons supported by evidence in the record to find Plaintiff's subjective symptom testimony only partially credible.  See Rollins, 261 F.3d at 857 ("The ALJ gave clear and convincing reasons for discounting portions of [plaintiff's] excess pain testimony, and those reasons were supported by substantial evidence.").  Accordingly, no remand is warranted.

**B.    The ALJ's Assessed Manipulative Limitation Of Frequent Overhead Reaching Is Supported By Substantial Evidence In The Record.**

In her second ground for relief, Plaintiff contends that there is a lack of substantial evidence in the record to support the ALJ's RFC determination that Plaintiff could use her upper extremities on a frequent basis.[4]  (Dkt. 13 at 18.)  Specifically, Plaintiff contends that the ALJ should have limited Plaintiff to

---

[4] In assessing Plaintiff's RFC, the ALJ determined, in part, that she could "could frequently handle, finger, and reach overhead with the arms."  (Dkt. 12-1 at 32.)

13

occasional use of her upper extremities based on the results of her post-surgery MRI and nerve test.  (Id.)  Plaintiff further contends that the ALJ improperly relied on prior administrative medicals findings ("PAMFs") and failed to adequately explain conflicting medical source opinions that concluded more restrictive limitations were warranted.  (Id. at 19-23.)  Accordingly, Plaintiff contends that remand is warranted to have the ALJ reconsider Plaintiff's ability to use her upper extremities.  (Id. at 23.)

### 1.    Legal Standard.

In social security appeals, the ALJ alone determines a claimant's RFC after consideration of "all the relevant evidence in [the] case record."  20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 404.1546(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."); McLeod v. Astrue, 640 F.3d 881, 884-85 (9th Cir. 2011).

In formulating an RFC, the ALJ weighs medical opinions, non-medical source opinions, and the claimant's credibility.  See Bray, 554 F.3d at 1226; see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").  An ALJ need not adopt any one medical opinion, but instead translates the claimant's physical condition into work-related restrictions and functions.  See Ly v. Colvin, 2014 WL 4795044, at *11 (E.D. Cal. Sept. 25, 2014) (citing Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174-76 (9th Cir. 2008)).

An ALJ may not make proprietary determinations regarding the claimant's condition not reflected in the medical evidence.  See, e.g., Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (holding that ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation

to play doctor and make their own independent medical findings."); <u>Javier A. G. v.
Saul</u>, 2020 WL 6940042, at *9 (C.D. Cal. Nov. 25, 2020) ("[A]n ALJ may not
substitute his or her lay interpretation of raw medical data in making an RFC
assessment in lieu of a qualified expert's medical opinion.").

### 2.    Medical Opinions.

The ALJ considered the reports of several medical consultants in determining
Plaintiff's RFC: (1) the State agency medical consultants ("State Agency
Consultants") on initial review and reconsideration; (2) Dr. Peter Newton,
orthopedic consultative examiner; (3) Dr. Clifford Clinton, Plaintiff's Kaiser family
medicine doctor; and (4) Dr. Carl Buckhorn, Plaintiff's own medical source. (Dkt.
12-1 at 35-36.)

### a.    State Agency Consultants.

On initial review, State agency consultant H. Han, M.D. determined that
Plaintiff had manipulative limitations in overhead reaching and handling. (Dkt. 12-
1 at 90.) Dr. Han indicated that Plaintiff should be restricted to frequent handling
and overhead reaching, but rejected a recommendation that she should be limited to
occasional fingering because she displayed "normal hand and finger movement."
(<u>Id.</u> at 91-92.) On reconsideration, State agency consultant R. Dwyer, M.D. also
recommended manipulative limitations of frequent handling and overhead reaching.
(<u>Id.</u> at 103-04.)

The ALJ considered and found "persuasive" the opinions of the State Agency
Consultants. (<u>Id.</u> at 35.) The ALJ noted that the State agency consultants "reviewed
the record and supported their findings with explanation" and "consultative
examiners personally examined the claimant and their opinions are supported by
their examination findings." (<u>Id.</u> at 35 (citing Dkt. 12-2 at 169; Dkt. 12-3 at 885).)
After examining additional evidence discussed below, the ALJ adopted the
manipulative limitations recommended by the State agency consultants that Plaintiff

could "could frequently handle, finger, and reach overhead with the arms." (Dkt.
12-1 at 32.)

### b.    Dr. Peter Newton.

The ALJ also considered the findings of the orthopedic consultative examiner,
Dr. Newton and found his opinions to be "partially persuasive." (Id. at 35.) Dr.
Newton opined that Plaintiff could perform a range of light work with several
limitations, including "no prolonged overhead work." (Dkt. 12-2 at 259, 303, 159.)
The ALJ found this restriction was "consistent with her history of cervical spine
issues and shoulder impingement and warrants a limitation to only frequent
overhead reaching." (Dkt. 12-1 at 35.) However, the ALJ also found that the record
warranted some additional manipulative limitations for only frequent handling and
fingering. (Id. at 36.) The ALJ further found Dr. Newton's assessment of greater
limitations, such as lifting no more than 10 pounds, to not be persuasive because it
was inconsistent with other evidence showing Plaintiff had full motor strength. (Id.)

### c.    Dr. Clifford Clinton

The ALJ also considered the opinion of Dr. Clinton, who opined, in part, that,
due to her chronic pain and fibromyalgia, Plaintiff was limited to only "occasional"
left- and right-hand overhead reaching, neck motions, keyboard/mouse use,
repetitive hand motions, and gripping/grasping with her hands. (Id. (citing Dkt. 12-
4 at 144, 417, 602, 604).) The ALJ found these opinions "not persuasive" because
they were not supported by any explanation, did not include examination findings
that would support such limitations, and were inconsistent with findings from other
consultative examiners. (Id.)

### d.    Dr. Carl Buckhorn

Finally, the ALJ considered the opinion of Dr. Buckhorn, who examined
Plaintiff and assessed upper extremity limitations of occasional overhead reaching,
occasional grasping with hands, and frequent fine manipulation with hands and

opined that she was unable to "do computer work."  (Id. (citing Dkt. 12-4 at 740-
46).)  The ALJ found these opinions "not persuasive" because, although Dr.
Buckhorn provided explanations for his finding, the findings were not supported by
his own treatment notes and was not consistent with the findings of the State
Agency Consultants and consultative medical examiners.  (Id.)

### 3. Analysis

At the hearing, Plaintiff argued that she should be "limited to occasional use
of her upper extremities, which would eliminate any of her past relevant work."
(Dkt. 12-1 at 49.)  Plaintiff now contends that the ALJ erred in making an RFC
determination that she be limited to frequent handling and overhead reaching
because it was unexplained and not supported by substantial evidence.  (Dkt. 13 at
19-20.)  There is no merit to this contention.

As noted previously, State agency consultants Drs. Han and Dwyer made
PAMFs that Plaintiff had manipulative limitations of frequent handling and
overhead reaching.  (Dkt. 12-1 at 90, 103-04.)  Dr. Han specifically found that a
greater limitation of occasional fingering was not warranted because of Plaintiff's
"normal hand and finger movement."  (Id. at 91-92 (capitalization omitted).)
Further, these recommendations were made based on consultative examinations by
Drs. Jerry Chuang and Warren Yu.  (See id. at 92 (referring to prior consultative
examiner's recommendation of a limitation to occasional fingering that was not
supported by normal hand and finger movement found on examination).)

Indeed, on September 9, 2020, Dr. Chuang performed a complete orthopedic
consultation with Plaintiff.  (Dkt. 12-2 at 165-69.)  Dr. Chuang's upper extremity
examination showed Plaintiff had tenderness in the shoulders, but had full range of
motion and no impingement or instability.  (Id. at 167.)  Plaintiff's elbows and
wrists showed no tenderness with full and painless range of motion.  (Id.)  Plaintiff's
hands showed no significant deformities or atrophy and, though she had some

tenderness and "mild weakness," she maintained basic hand functions in fine and gross manipulation, could make "full fists," and had full range of motion in fingers and thumbs.  (Id. at 167.)  Dr. Chuang made a functional assessment that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, could push and pull on a frequent basis, and could use "both hands for fine and gross manipulations frequently."  (Id. at 169.)

On March 27, 2022, Dr. Yu also performed a complete orthopedic consultation with Plaintiff, noting that "[p]revious studies do note of mild carpal tunnel syndrome, upper extremities."  (Id. at 881.)  Upon examination of the upper extremities, however, Dr. Yu found "no significant tenderness in the shoulders and range of motion was "full."  (Id. at 883.)   Dr. Yu similarly found no tenderness in elbows, wrists, and hands, and Plaintiff exhibited full range of motion all of her upper extremities.  (Id.)  Further, Plaintiff's motor strength was "grossly intact," and sensation was "well preserved" in both upper and lower extremities.  (Id. at 884.)  Dr. Yu opined that Plaintiff could perform manipulative activities such as fingering, handling, and reaching "on a frequent basis."  (Id. at 885.)

The ALJ found "persuasive" the opinions of the State Agency Consultants and adopted recommendations that Plaintiff could "could frequently handle, finger, and reach overhead with the arms," noting that "consultative examiners personally examined [Plaintiff]" and their opinions were "supported by their examination findings."  (Dkt. 12-1 at 35.)  Although Plaintiff points to the opinions of other doctors—i.e., Drs. Clinton and Buckhorn—that supported greater restrictions, the ALJ properly discounted those opinions because they were not properly supported by explanation and examination findings or their own treatment notes and conflicted with the objective medical evidence.  (Id. at 36.)  An ALJ may properly reject a treating physician's opinion where, as here, the opinion is not adequately supported by treatment notes or objective clinical findings.  See Tommasetti, 533 F.3d at 1041

(holding that an ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's treatment notes); Batson, 359 F.3d at 1195 ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings."); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (finding treating physician's opinion properly rejected where physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]").

Plaintiff also faults the ALJ for failing to consider the 2018 opinion of Dr. Navid Ghalambor, who indicated that Plaintiff could not engage in "keyboarding/mousing in excess of four hours a day." (Dkt. 13 at 22 (citing Dkt. 12-1 at 957-58).) While an ALJ must consider all evidence in a claimant's case record when making a disability determination, an ALJ is not required to discuss all evidence presented, but "must explain why significant probative evidence has been rejected." Kilpatrick v. Kijakazi, 35 F.4th 1187, 1193 (9th Cir. 2022) (quoting Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). Evidence is significant or probative if a "reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." Stout, 454 F.3d at 1056.

Here, it is not clear that Dr. Ghalambor's treatment notes constitute significant probative evidence of a permanent disability. Rather, it appears that Dr. Ghalambor was recommending temporary restrictions—*i.e.*, "trial light duty"—in keyboarding and driving to alleviate Plaintiff's subjective complaints of neck pain, after which Dr. Ghalambor referred her to other medical providers for pain management. (Dkt. 12-1 at 957, 959, 961.) Nevertheless, the ALJ imposed a manipulative limitation that Plaintiff could "could frequently handle, finger, and reach overhead with the arms." (Dkt. 12-1 at 32.) "Occasionally" and "frequently"

are terms of art under the Social Security regulations: occasionally means "very little up to one-third of the time"; frequently means "from one-third to two-thirds of the time." See SSR 83-14, 1983 WL 31254, at *2 (1983). Because Dr. Ghalambor opined that Plaintiff could engage in keyboarding/mousing up to four hours a day, this opinion does not conflict with the ALJ's limitation to performing fine manipulation frequently, as it falls on the spectrum of one-third to two-thirds of the 8-hour workday. See Jones v. Colvin, 2015 WL 3952309, at *2 (C.D. Cal. June 29, 2015) ("Plantiff's four-hour limitation falls within the 'frequent' activity range."); Cavanagh v. Colvin, 2015 WL 1650365, at *3 (W.D. Wash. Apr. 14, 2015) ("[I]f an individual can perform an activity for up to four hours in an eight-hour workday, he or she would be considered to be performing it on a frequent basis, given that this falls within one-third and two-thirds of an eight-hour workday."). Thus, any error in the ALJ's failure to address the opinion of Dr. Ghalambor was harmless because no reasonable ALJ would have reached a different disability determination having considered it. See Stout, 454 F.3d at 1056.

In sum, the Court finds that the ALJ's limitation in the RFC of frequent handling, fingering, and overhead reaching to be a reasonable interpretation of the objective medical evidence. To the extent Plaintiff interprets the evidence differently, the Ninth Circuit has held that "if the record would support more than one rational interpretation, [the Court must] defer to the ALJ's decision." Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005); see also Owen v. Saul, 808 F. App'x 421, 423 (9th Cir. 2020) ("Resolving conflicts is the ALJ's responsibility and prerogative . . . [where] the ALJ's interpretation of the evidence is rational, it must be upheld." (internal quotations and citations omitted)). Because the ALJ's RFC determination is supported by substantial evidence in the record, the Court declines to disturb the ALJ's rational interpretation of the medical evidence and remand is not warranted.

**C.**  **New Evidence Submitted To Appeals Council Does Not Require Remand.**

In her third ground for relief, Plaintiff contends that new evidence submitted to the Appeals Council requires remand.  (Dkt. 13 at 23-25.)  Specifically, Plaintiff asserts that a June 27, 2024 letter from Dr. Clifford L. Clinton concerning Plaintiff's upper extremity limitations demonstrates that Plaintiff could "only use her upper extremities 25 percent of the time," which would preclude Plaintiff's ability to perform any past relevant work.  (Id. at 23.)  Plaintiff also asserts that a May 1, 2024 letter from Dr. Kevin Huang, D.O., stating that Plaintiff's "arm/hand pains . . . affect her ability to perform repetitive hand tasks," supports additional extremity limitations.  (Id. at 23, 25.)  Respondent argues that the evidence did not relate to the relevant disability period at issue and would otherwise not have changed the ALJ's decision.  (Dkt. 15 at 15-16.)

**1.**     **Dr. Clinton's and Dr. Huong's Letters.**

On June 27, 2024, Dr. Clinton wrote a letter indicating that Plaintiff "has been evaluated" in the orthopedics department and had "neck x[-]rays and MRIs, due to her medical condition."  (Dkt. 12-1 at 14.)  Dr. Clinton indicated that Plaintiff "is unable to lift her arms regularly without pain," including "lifting arms to a keyboard or desktop."  (Id.)  Dr. Clinton opined that reasonable limitations should include "no overhead arm movements" and "limiting repetitive hand and arm activities . . . to no more than 25% of her shift."  (Id.)

On May 1, 2024, Dr. Huang wrote a letter stating that Plaintiff "was evaluated in orthopedic sports medicine clinic for bilateral hand pains which are felt to stem from cervical spine conditions."  (Dkt. 12-1 at 23.)  Dr. Huang opined that "[h]er arm/hand pains likely stemming from the neck [a]ffect her ability to perform repetitive hand tasks."  (Id.)

**2.**     **Legal Standard.**

A party seeking a remand for consideration of additional evidence under 42

U.S.C. § 405(g) must demonstrate that (1) the evidence is material, and (2) there was good cause for the failure to incorporate the evidence into the record during the prior proceeding.  See 42 U.S.C. § 405(g); Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001).  However, the "new and material evidence" standard in section 405(g) "applies only to new evidence that **is not part of the administrative record and is presented in the first instance to the district court**."  Brewes v. Comm'r of Social Sec. Admin., 682 F.3d 1157, 1164 (9th Cir. 2012) (emphasis added).  "[E]vidence submitted to and considered by the Appeals Council is not new but rather is part of the administrative record properly before the district court."  Id. The district court must therefore consider such evidence "in determining whether the Commissioner's decision is supported by substantial evidence."  Id. at 1160. "Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence."  Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011).

**3.    Analysis.**

After the ALJ's unfavorable decision, Plaintiff submitted the letters from Drs. Clinton and Huang to the Appeals Council.  (Dkt. 12-1 at 8.)  The Appeals Council determined that the "additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 30, 2023."  (Id.)  The Ninth Circuit has explained that medical evidence "submitted to the Appeals Council does not affect the ALJ's disability determination and does not warrant remand" if "the new evidence post-dates the period under review, is not retroactive to that period, and therefore would not reasonably affect the ALJ's decision."  Petersen v. Berryhill, 737 F. App'x 329, 332 (9th Cir. 2018); see also Koch v. Berryhill, 720 F. App'x 361, 363-64 (9th Cir. 2017) ("Evidence related to a period later than the period on or before the ALJ's

decision [does] not affect the decision about whether [plaintiff] was disabled during the relevant time period: on or before . . . the date of the ALJ's decision."); Brewes, 682 F.3d at 1162 ("The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, **so long as the evidence relates to the period on or before the ALJ's decision**." (emphasis added)); Quesada v. Colvin, 525 F. App'x 627, 630 (9th Cir. 2013) ("[T]he district court properly concluded that the additional evidence [plaintiff] submitted to the Appeals Council would not have changed the outcome in the case because it post-dated the ALJ's decision and therefore was not relevant.").

Here, the relevant period under review was from April 20, 2017, Plaintiff's alleged onset date, to June 30, 2023, her date last insured. (Dkt. 12-1 at 29.) The letters at issue post-date June 30, 2023, by nearly a year and do not indicate any examination, testing, or evaluation occurred during the relevant period. (Id. at 14, 23.) Furthermore, the doctors' opinions regarding any limitation for hand and arm movements also post-date the relevant period and do not purport to be retroactive to the period under review. (See id.) Plaintiff suggests that Dr. Clinton's June 2024 opinion "relates to the period at issue" because it addresses the reasons the ALJ rejected Dr. Clinton's previous medical opinion evidence. (Dkt. 13 at 24; Dkt. 16 at 20.) However, nothing in the June 2024 letter references his previous opinions or suggests that he is attempting to provide a "missing explanation" to his previously rejected opinion evidence. (Dkt. 12-1 at 14.) Instead, the letter from Dr. Clinton, as well as the letter from Dr. Huang, clearly and unequivocally opine limitations as of the date they were written, well after the relevant period. (Id. at 14, 23.) As such, remand to the ALJ is not required. See Marin v. Astrue, 2012 WL 5381374, at *6 (C.D. Cal. Oct. 31, 2012) ("The additional evidence from November 2010 post-dated the ALJ's decision. Nothing in that evidence suggests that it was, or was

23

intended to be, a retrospective assessment of plaintiff's condition prior to the date of the ALJ's decision. . . . Therefore, that evidence does not provide a basis for reversing the ALJ's decision.").

## VII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 10, 2025 _____

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE